**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

|  |  |
|---|---|
| FENDI, S.R.L. | |
| Plaintiff, | |
| v. | Case No. **25-cv-5647** |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiff Fendi, S.R.L. ("Fendi") brings this action against the Partnerships and Unincorporated Associations identified on Schedule A filed herewith (collectively, "Defendants") alleging as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through ecommerce stores operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S.

1

dollars and, on information and belief, have sold products using infringing and counterfeit versions of Fendi's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Fendi substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      Fendi files this action to combat e-commerce store operators who trade upon Fendi's reputation and goodwill by selling unauthorized and unlicensed products, including handbags, purses, and other fashion accessories, using infringing and counterfeit versions of Fendi's federally registered trademarks (the "Counterfeit Fendi Products"). Defendants operate e-commerce stores under one or more Seller Aliases that advertise, offer for sale and sell Counterfeit Fendi Products to unknowing consumers.

4.      E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and giving rise to the inference that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under multiple Seller Aliases to conceal their identities and the full scope and interworking of their counterfeiting operation. Fendi is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Fendi Products over the Internet. Fendi has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks because of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

5.      Fendi is organized and existing under the laws of Italy with its principal place of business in Italy.

6.      Fendi was founded in 1925 by Adele and Edoardo Fendi. Fendi is a world-famous luxury brand engaged in the business of styling and selling a diverse portfolio of high-quality luxury goods, including a variety of men's and women's apparel, fashion accessories, and leather goods sold throughout the United States (collectively, the "Fendi Products"). In 2000, Fendi became part of the Louis Vuitton Moet Hennessy (LVMH) group.

7.      Fendi Products have become enormously popular and even iconic, driven by Fendi's arduous quality standards and innovative designs. Among the purchasing public, genuine Fendi Products are instantly recognizable as such. In the United States and around the world, the Fendi brand has come to symbolize high quality, and Fendi Products are among the most recognizable of their kind in the world.

8.      Fendi Products are distributed and sold to customers through retailers throughout the United States, including in company-operated boutiques, via its e-commerce website located at www.fendi.com, and through a selective network of high-quality department stores in Illinois such as Nordstrom, Neiman Marcus, and Saks Fifth Avenue.

9.      Fendi incorporates a variety of distinctive marks in the design of its various Fendi Products. As a result of its long-standing use, Fendi owns common law trademark rights in its trademarks. Fendi has also registered its trademarks with the United States Patent and Trademark Office. Fendi Products typically include at least one of Fendi's registered trademarks. Often several Fendi marks are displayed on a single product. Fendi uses its trademarks in connection

3

with the marketing of its Fendi Products, including the following marks which are collectively referred to as the "Fendi Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 1,214,472 |  | Oct. 26, 1982 | For: Leather and Imitations of Leather; Luggage, Trunks, and Travelling Bags in class 018 |
| 1,244,466 | FENDI | July 05, 1983 | For: Traveling Luggage, Trunks, Purses, Rucksacks, Brief Cases, Attache Cases, Wallets, Key Cases, Passport Cases, Business Card Cases, Cosmetic Cases Sold Empty in class 018 <br><br> For: Fur Coats, Fur Stoles, Fur Jackets, Raincoats, Cloth Coats, Jackets, Skirts, Blouses, Dresses, Hosiery, Shirts, Trousers, Hats, Scarves, Foulards, Gloves, Ties, Neckwear, Belts, Swimwear, Shoes, Boots in class 025 |
| 1,267,539 |  | February 21, 1984 | For: Perfumes, Toilet Water in class 003 <br><br> For: Fur Coats, Fur Stoles, Fur Pieces, Rainwear, Cloth Coats, Jackets, Skirts, Trousers, Dresses, Hosiery, Shirts, Blouses, Headwear, Scarves, Foulards, Gloves, Ties, Neckwear, Belts, Swimwear, Shoes, Boots in class 025 |
| 2,648,256 |  | November 12, 2002 | For: Leather and imitation of leather items, namely, traveling trunks and traveling bags, attache cases, briefcases, handbags, shoulder bags, men's carry-on bags, tote bags, wallets, purses in class 018 |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 2,648,257 | | November 12, 2002 | For: Leather and imitation of leather items, namely, handbags, shoulder bags in class 018 |
| 4,036,925 | | October 11, 2011 | For: Leather and imitation leather; furs; goods made of leather and imitation leather, namely, handbags, shoulder bags, briefcases, leatherwear, namely, key cases, purses, wallets, backpacks, pouches, leather straps in class 018<br><br>For: Clothing, namely, shirts, t-shirts, sweatshirts, sport shirts, pants, sport pants, trousers, shorts, skirts, dresses, belts, sweaters, cardigans, pullovers, jackets, scarves, foulards, gloves; waterproof clothing, namely, waterproof jackets, swimsuits; hats; footwear, namely, shoes, sport shoes, boots, slippers, sneakers, sandals in class 025 |
| 4,362,861 | | July 9. 2013 | For: Eyeglasses, sunglasses, eyeglass and sunglass lenses, eyeglass frames in class 009<br><br>For: Jewelry of precious and non-precious metal, namely, bracelets, necklaces, neck chains and rings, earrings, watches, wristwatches, watch bands and straps, chronographs for use as timepieces and for use as watches in class 014<br><br>For: Bags, namely, shoulder bags, travelling bags, handbags, Boston bags, waist packs, sling bags for carrying infants, leather and canvas shopping bags, duffle bags, tote bags, clutch bags, trunks, wallets, purses, briefcases, attach cases, pouches of leather or textile, school bags, suitcases, garment bags for travel, key cases made of leather, backpacks, rucksacks, vanity cases sold empty, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | carry-on bags, beach bags, umbrellas in class 018 |
| | | | For: Furniture, household furniture, namely, chairs, lounge chairs, armchairs, tables, coffee tables, stools, sofas and divans, ottomans in class 020 |
| | | | For: beach towels in class 024 |
| | | | For: Articles of clothing for men, women and children, namely, pullovers, cardigans, sweaters, jumpers, jackets, sweatshirts, parkas, blouses, shirts, trousers, jeans, waistcoats, skirts, T-shirts, dresses, men's suits, coats, overcoats, jackets, vests, shawls, scarves, neckties, gloves for clothing, belts for clothing, shoes, boots, sandals, slippers[,] hats and caps in class 025 |
| 4,409,049 | FENDI | October 1, 2013 | For: Perfumes, eau de parfum, toilet water, after shave creams, after shave lotions, shaving lotions, shampoos, creams, deodorants for personal use, toilet soaps, bath soaps, bath and shower gels, body lotions, skin lotions in class 003 |
| | | | For: Eyeglasses, sunglasses, eyeglass frames and eyeglass cases; bags, cases and sleeves specially adapted for holding or carrying all the above mentioned goods, namely, eyeglasses, sunglasses, eyeglass and sunglass lenses, eyeglass frames and eyeglass cases; telephones and mobile phones in class 009 |
| | | | For: Jewelry of precious and non-precious metal, namely, bracelets, necklaces, neck chains and rings, brooches, earrings, pendants, cuff-links, jewelry cases; clocks, watches, wristwatches, watch bands and straps, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | chronographs for use as timepieces and for use as watches, chronometers in class 014 |
| | | | For: Bags, namely, shoulder bags, travelling bags, handbags, Boston bags, waist packs, leather and canvas shopping bags, duffle bags, tote bags, clutch bags, trunks, wallets, purses, briefcases, attach cases, pouches of leather or textile, school bags, suitcases, key cases made of leather, backpacks, rucksacks, vanity cases sold empty, carry-on bags, beach bags, umbrellas in class 018 |
| | | | For: Furniture, bathroom furniture, kitchen furniture, household furniture, namely, chairs, lounge chairs, armchairs, tables, coffee tables, benches, stools, beds, bedside tables, wardrobes, desks, sofas and divans, ottomans, shelves, drawers, wall cupboards, showcases, television stands, bookshelves, bathroom cabinets; mirrors in class 020 |
| | | | For: Articles of clothing for men, women and children, namely, pullovers, cardigans, sweaters, jerseys, jumpers, jackets, sweatshirts, parkas, bathing suits, blouses, shirts, trousers, jeans, waistcoats, skirts, shorts, T-shirts, dresses, men's suits, coats, raincoats, overcoats, fur coats and jackets, vests, hosiery and panty hose, bathrobes, shawls, scarves, neckties, gloves for clothing, belts for clothing, shoes, boots, sandals, slippers, clogs, hats and caps in class 025 |
| | | | For: The bringing together, for the benefit of others, of a variety of goods excluding the transport thereof, such as eyeglasses, jewelry, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | horological instruments, bags, wallets and other leather goods, furniture, clothing, footwear, headgear, personal accessories, enabling customers to conveniently view and purchase those goods, as well as retail store services for the above mentioned products in class 035 <br><br> For: Resort hotel services, namely, hotel services and hotel accommodation, hotel services for holidays, resort hotel services; providing temporary lodging services in the nature of a condominium and cooperative hotel; restaurant, bar and cocktail lounge services; contract food services; take away restaurant services; bars, restaurants and cafes; catering services; provision of exhibition facilities in the nature of halls; travel agency services, namely, making reservations and bookings for temporary accommodation in class 043 |
| 4,916,008 | **FF** | March 15, 2016 | For: Eyeglasses; sunglasses; eyeglass frames; eyeglass and sunglass cases and holders; strings and chains for eyeglasses and sunglasses in class 009 |
| 4,929,737 | FENDI | April 5, 2016 | For: Eyeglasses; sunglasses; eyeglass lenses; eyeglass frames; eyeglass and sunglass cases and holders; protective helmets; sports helmets; helmets for motorcyclists; blank USB flash drives; headphones; earphones; hi-fi apparatus, namely, record players, audio speakers, personal stereos; cameras and digital cameras; video cameras; bags, cases and sleeves specially adapted for holding or carrying mobile phones, computers, laptop computers, headphones, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | earphones, photographic apparatus and equipment, cameras, and video cameras; and strings and chains, namely, straps and lanyards specially adapted for mobile phones, MP3 players, MP4 players, portable media players, and digital audio and video players in class 009 |
| 5,139,608 | FENDI | February 14, 2017 | For: Shoulder straps for handbags in class 018 |
| 5,505,551 |  | July 3, 2018 | For: Fragrances; make-up in class 003<br><br>For: Cell phone cases; cell phone covers; cell phone straps; sunglasses in class 009<br><br>For: Decorative fobs for keys; key rings with decorative trinkets or fobs; precious metal key holders with decorative trinkets or fobs; key holders of precious metals; key fobs of precious metals; key rings of precious metals; key fobs being rings coated with precious metal; key chains as jewelry, being trinkets or fobs; key rings with decorative trinkets or fobs of precious metal in class 014<br><br>For: Leather and imitations of leather; animal skins and hides; trunks and travelling bags; umbrellas and parasols; walking sticks; whips; harness; saddlery; all-purpose carrying bags; shoulder bags; travelling bags; hand bags; boston bags; waist packs; sling bags for carrying infants; duffle bags; tote bags; clutch bags; wallets; purses; briefcases; attaché cases; pouches of leather; pouches of textile, not for packaging; school bags; suitcases; garment bags for travel; key cases made of leather; backpacks; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | rucksacks; vanity cases sold empty; carry-on bags; beach bags; umbrellas in class 018<br>For: Furniture; mirrors; picture frames; air cushions, not for medical purposes; air mattresses, not for medical purposes; air pillows, not for medical purposes; bead curtains for decoration; bedding, except linen, namely, beds, mattresses, pillows and bolsters; busts of wood, wax, plaster or plastic; wardrobes; curtain holders, not of textile material; curtain tie-backs, namely, non-textile curtain holders; cushions; doors for furniture; dressmakers' dummies; screens for fireplaces; house numbers, not of metal, non-luminous; indoor window blinds being shades; infant walkers; mannequins; decorative mobiles; pet cushions; pillows; slatted indoor blinds; statues of wood, wax, plaster or plastic; statuettes of wood, wax, plaster or plastic; table tops; tailors' dummies; decorative wind chimes; works of art of wood, wax, plaster or plastic; signboards of wood or plastics in class 020<br>For: Clothing, namely, shirts and pants; footwear; headwear; pullovers; cardigans; sweaters; jerseys; jumpers; jackets; sweatshirts; parkas; bathing suits; blouses; shirts; trousers; jeans; waistcoats; skirts; shorts; T-shirts; dresses; men's suits; coats; raincoats; overcoats; fur coats and jackets; overalls; underwear; vests; hosiery; panty hose; bathrobes; shawls; scarves; neckties; gloves being clothing; belts for clothing; shoes; boots; sandals; slippers; clogs; hats and caps in class 025 |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | For: Information and advice in relation to retail store services in the field of ready-to-wear, clothing and footwear; information and advice in relation to direct selling through telecommunications in the field of ready-to-wear, clothing and footwear; information and advice in relation to direct selling through telephone in the field of ready-to-wear, clothing and footwear; information and advice in relation to direct selling through facsimile in the field of ready-to-wear, clothing and footwear; information and advice in relation to direct selling through email in the field of ready-to-wear, clothing and footwear; information and advice in relation to direct selling through the Internet in the field of ready-to-wear, clothing and footwear; information and advice in relation to on-line direct selling in the field of ready- to-wear, clothing and footwear; information and advice in relation to wholesale store services in the field of ready-to-wear, clothing and footwear; computerized on-line ordering service through telephones in the field of ready-to-wear, clothing and footwear; computerized on-line ordering service through facsimiles in the field of ready-to-wear, clothing and footwear; computerized on-line ordering service through email in the field of ready-to-wear, clothing and footwear; computerized on-line ordering service through the Internet including social networks in the field of ready-to-wear, clothing and footwear; organisation of mail order promotions in the field of ready-to-wear, clothing and footwear; marketing, including direct marketing |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | and direct mail advertising in the field of ready-to-wear, clothing and footwear; advertising by mail order in the field of ready-to-wear, clothing and footwear; point of purchase promotions in the field of ready-to-wear, clothing and footwear; on-line advertising in the field of ready-to-wear, clothing and footwear; sale promotions in the field of ready-to-wear, clothing and footwear in class 035 |
| 5,563,158 |  | September 18, 2018 | For: Fragrances; make-up in class 003<br><br>For: Cell phone cases; cell phone covers; cell phone straps; sunglasses in class 009<br><br>For: Decorative fobs for keys; key rings being trinkets or fobs; key holders of precious metals being trinkets or fobs; key holders of precious metals; decorative key fobs of precious metals; key rings of precious metals; key fobs being rings coated with precious metal; key chains as jewelry, being trinkets or fobs; key rings being trinkets or fobs of precious metal in class 014<br><br>For: Leather and imitations of leather; animal skins and hides; trunks and travelling bags; umbrellas and parasols; walking sticks; whips; harnesses; saddlery; bags, namely, leather bags, weekend bags and all-purpose carrying bags; shoulder bags; travelling bags; hand bags; boston bags; waist packs; sling bags for carrying infants; duffle bags; tote bags; clutch bags; wallets; purses; briefcases; attaché cases; pouches of leather; pouches of textile, not for packaging; school bags; suitcases; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | garment bags for travel; key cases made of leather; backpacks; rucksacks; vanity cases sold empty; carry-on bags; beach bags; umbrellas in class 018<br><br>For: Furniture; mirrors; picture frames; air cushions, not for medical purposes; air mattresses, not for medical purposes; air pillows, not for medical purposes; bead curtains for decoration; bedding, namely, beds, bed headboards and bed fittings not of metal; busts of wood, wax, plaster or plastic; covers for clothing being wardrobe; curtain holders, not of textile material; curtain tie-backs in the nature of non-textile curtain holders; cushions; doors for furniture; dressmakers' dummies; fire screens, domestic being screens for fireplaces; garment covers for storage being nonmetal and non-paper containers for storage, fitted fabric furniture covers, furniture and wardrobes; house numbers, not of metal, nonluminous; indoor window blinds being shades; infant walkers; mannequins; decorative mobiles; pet cushions; pillows; slatted indoor blinds; statues of wood, wax, plaster or plastic; statuettes of wood, wax, plaster or plastic; table tops; tailors' dummies; decorative wind chimes; works of art of wood, wax, plaster or plastic; signboards of wood or plastics in class 020<br><br>For: Clothing, namely, shirts, dresses, pants and sweaters; footwear; headwear; pullovers; cardigans; sweaters; jerseys; jumpers; jackets; sweatshirts; parkas; bathing suits; blouses; shirts; trousers; jeans; waistcoats; skirts; shorts; T-shirts; |

13

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | dresses; men's suits; coats; raincoats; overcoats; fur coats and jackets; overalls; underwear; vests; hosiery; panty hose; bathrobes; shawls; scarves; neckties; gloves being clothing; belts for clothing; shoes; boots; sandals; slippers; clogs; hats and caps being headwear in class 025<br><br>For: Providing information and advice in relation to retailing services in the field of ready-to-wear, clothing and footwear; providing information and advice in relation to direct selling through telecommunications in the field of ready-to-wear, clothing and footwear; providing information and advice in relation to direct selling through telephone in the field of ready-to-wear, clothing and footwear; providing information and advice in relation to direct selling through facsimile in the field of ready-to-wear, clothing and footwear; providing information and advice in relation to direct selling through email in the field of ready-to-wear, clothing and footwear; providing information and advice in relation to direct selling through the Internet in the field of ready-to-wear, clothing and footwear; providing information and advice in relation to on-line direct selling in the field of ready- to- wear, clothing and footwear; providing information and advice in relation to wholesaling services in the field of ready-to- wear, clothing and footwear; computerized on-line ordering service through telephones in the field of ready-to-wear, clothing and footwear; computerized on-line ordering service through facsimiles in the field of ready-to-wear, clothing |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | and footwear; computerized on-line ordering service through email in the field of ready-to-wear, clothing and footwear; computerized on-line ordering service through the Internet including social networks in the field of ready-to-wear, clothing and footwear; advertising by mail order, namely, organisation of mail order promotions in the field of ready-to-wear, clothing and footwear; marketing, including direct marketing and direct mail advertising in the field of ready-to-wear, clothing and footwear; advertising by mail order in the field of ready-to-wear, clothing and footwear; promotion and marketing services, namely, point of purchase promotions in the field of ready-to-wear, clothing and footwear; on-line advertising in the field of ready-to-wear, clothing and footwear; sales promotions services in the field of ready-to-wear, clothing and footwear in class 035 |
| 6,821,740 |  | August 16, 2022 | For: Fragrances; perfumery in class 003<br><br>For: Carpets in class 027 |
| 6,874,501 |  | October 18, 2022 | For: Sunglasses in class 009<br><br>For: Necklace, rings, earrings, bracelet in class 014 |

15

10.     The Fendi Trademarks have been used exclusively and continuously in the U.S. by Fendi and have never been abandoned. The above U.S. registrations for the Fendi Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as Exhibit 1 are true and correct copies of the U.S. Registration Certificates for the Fendi Trademarks included in the above table. The registrations for the Fendi Trademarks constitute prima facie evidence of their validity and of Fendi's exclusive right to use the Fendi Trademarks pursuant to 15 U.S.C. § 1057(b).

11.     The Fendi Trademarks are exclusive to Fendi and are displayed extensively on Fendi Products and in Fendi's marketing and promotional materials. Fendi Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Fendi has expended millions of dollars annually in advertising, promoting, and marketing featuring the Fendi Trademarks. Because of these and other factors, the Fendi name and the Fendi Trademarks have become famous throughout the United States.

12.     The Fendi Trademarks are distinctive when applied to Fendi Products, signifying to the purchaser that the products come from Fendi and are manufactured to Fendi's quality standards. Whether Fendi manufactures the products itself or licenses others to do so, Fendi has ensured that products bearing its trademarks are manufactured to the highest quality standards. The Fendi Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Fendi Trademarks is of incalculable and inestimable value to Fendi.

13.     Fendi operates an e-commerce website where it promotes Fendi Products at Fendi.com. Fendi Products are featured and described on the website and are available for

purchase. The Fendi.com website features proprietary content, images, and designs exclusive to Fendi.

14.     Fendi has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Fendi Trademarks. As a result, products bearing the Fendi Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Fendi. Fendi is a multi-million-dollar business, and Fendi Products have become among the most popular of their kind in the world.

15.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Fendi. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Fendi to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Fendi intends to take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

17.     The success of the Fendi brand has resulted in its significant counterfeiting. Consequently, Fendi has a worldwide anti-counterfeiting program and regularly investigates

suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Fendi has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were targeting and/or offering for sale Counterfeit Fendi Products to consumers in this District and throughout the United States.

18.     According to U.S. Customs and Border Protection ("CBP"), in fiscal year 2021 "CBP made over 27,000 seizures . . . with an estimated manufacturer's suggested retail price (MSRP) of over $3.3 billion, which represents an increase of 152% over the previous Fiscal Year, when goods valued at $1.3 billion MSRP were seized for IPR [Intellectual Property Rights] violations." (*See* Exhibit 2, Fiscal Year 2021 Intellectual Property Rights Seizure Statistics Report, at 5.) In FY 2021, over 24,000 of the IPR seizures (about 89 percent of the total) were shipped via mail or express services (as opposed to cargo or other means). (*Id.* at 37.) Over 50 percent of the IPR seizures (with an MSRP of over $2.5 billion) originated from China and Hong Kong. (*Id.* at 35.)

19.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." (*See* Exhibit 3, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).)

20.     In its report on "Combating Trafficking in Counterfeit and Pirated Goods," the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans found that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommended that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. (Exhibit 4 hereto at 11, 35 (Jan. 24, 2020).) The report also notes that counterfeit

products account for billions in economic losses, resulting in millions of lost jobs for legitimate businesses. (*Id.* at 18-19.)

21.     Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store fronts.  (*Id.* at 22.)  Since platforms generally do not require a seller to identify its underlying business entity, counterfeiters can have many different profiles that appear unrelated even though they are commonly owned and operated.  (*Id.* at 39.)  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." (*Id.* at 25.)

22.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Fendi Products to residents of Illinois.

23.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal, among other methods. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Fendi has not licensed or authorized Defendants to use any of the Fendi Trademarks, and none of the Defendants are authorized retailers of genuine Fendi Products.

19

24.     Many Defendants also deceive unknowing consumers by using the Fendi Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract search engines crawling the Internet looking for websites relevant to consumer searches for Fendi Products. Other e-commerce stores operating under Seller Aliases omit using the Fendi Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Fendi Products.

25.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

26.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Fendi Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar or misspellings, and/or the use of the same text and images. Additionally, Counterfeit Fendi Products for sale by the Seller Aliases

bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Fendi Products were manufactured by and come from a common source and that Defendants are interrelated.

28.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

29.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Fendi's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Fendi.

30.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to manufacture, import, distribute, offer for sale, and sell Counterfeit Fendi Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without authorization or license from Fendi, have jointly and severally, knowingly and willfully used and continue to use the Fendi Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Fendi Products into the United States and Illinois over the Internet.

31.     Defendants' unauthorized use of the Fendi Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Fendi Products, including the sale of Counterfeit Fendi Products into the United States, including Illinois, is likely to cause and

has caused confusion, mistake, and deception by and among consumers and is irreparably harming Fendi.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

32.     Fendi hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Fendi Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The Fendi Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Fendi Products offered, sold, or marketed under the Fendi Trademarks.

34.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Fendi Trademarks without Fendi's permission.

35.     Fendi is the exclusive owner of the Fendi Trademarks. Fendi's United States Registrations for the Fendi Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Fendi's rights in the Fendi Trademarks and are willfully infringing and intentionally using counterfeits of the Fendi Trademarks. Defendants' willful, intentional, and unauthorized use of the Fendi Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Fendi Products among the general public.

36.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37.     Fendi has no adequate remedy at law, and if Defendants' actions are not enjoined, Fendi will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Fendi Trademarks.

38.     The injuries and damages sustained by Fendi have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Fendi Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

39.     Fendi hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Fendi Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Fendi or the origin, sponsorship, or approval of Defendants' Counterfeit Fendi Products by Fendi.

41.     By using the Fendi Trademarks on the Counterfeit Fendi Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Fendi Products.

42.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Fendi Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

23

43.     Fendi has no adequate remedy at law and, if Defendants' actions are not enjoined, Fendi will continue to suffer irreparable harm to its reputation and the goodwill of its Fendi brand.

**PRAYER FOR RELIEF**

WHEREFORE, Fendi prays for judgment against Defendants as follows:

(l)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.     Using the Fendi Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Fendi Product or is not authorized by Fendi to be sold in connection with the Fendi Trademarks;

b.     Passing off, inducing, or enabling others to sell or pass off any product as a genuine Fendi Product that is not Fendi's or not produced under the authorization, control, or supervision of Fendi and approved by Fendi for sale under the Fendi Trademarks;

c.     Committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Fendi Products are those sold under the authorization, control or supervision of Fendi, or are sponsored by, approved by, or otherwise connected with Fendi;

d.     Further infringing the Fendi Trademarks and damaging Fendi's goodwill; and

e.     Manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any

manner, products or inventory not manufactured by or for Fendi, nor authorized by Fendi to be sold or offered for sale, and which bear any of Fendi's trademarks, including the Fendi Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

(2)      For entry of an Order that, upon Fendi's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Fendi Trademarks;

(3)      That Defendants account for and pay to Fendi all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Fendi Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

(4)      In the alternative, that Fendi be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Fendi Trademarks;

(5)      That Fendi be awarded its reasonable attorneys' fees and costs; and

(6)      That awards Fendi any and all other relief that this Court deems just and proper.

Dated  May 21 2025.  Respectfully submitted,


_____*/s/ Paul Kossof*_____

*Counsel for Plaintiff Fendi SA*
Paul Kossof. (ARDC # 6319307) Kossof IPR
1509 Waukegan Road, #1162 Glenview
Chicago, IL 60025
(224) 433-1553
pkossof@kossofipr.com